FILED: September 18, 2019

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1848
(1:12-cv-00192-CCB)

EUNICE GRAVES,

Plaintiff – Appellant,

and

CARLIN ROBINSON, individually, as Guardian and next Friend of I.Y., M.Y. and
A.Y., and as Personal Representative of the Estate of Veronica Williams, Deceased,

Plaintiff,

v.

DANIEL A. LIOI; MELVIN RUSSELL, Major,

Defendants – Appellees,

and

BALTIMORE CITY POLICE DEPARTMENT,

Defendant,

CLEAVEN L. WILLIAMS, JR.,

Defendant.

No. 17-1857
(1:12-cv-00192-CCB)

CARLIN ROBINSON, individually, as Guardian and next Friend of I.Y., M.Y. and A.Y., and as Personal Representative of the Estate of Veronica Williams, Deceased,

        Plaintiff – Appellant,

and

EUNICE GRAVES,

        Plaintiff,

v.

DANIEL A. LIOI; MELVIN RUSSELL, Major,

        Defendants – Appellees,

and

BALTIMORE CITY POLICE DEPARTMENT,

        Defendant,

CLEAVEN L. WILLIAMS, JR.,

        Defendant.

O R D E R

The Court denies the petition for rehearing en banc.

A requested poll of the court failed to produce a majority of judges in regular active service and not disqualified who voted in favor of rehearing en banc. Chief Judge Gregory

2

voted to grant rehearing en banc; Judge Wilkinson, Judge Niemeyer, Judge King, Judge Agee, Judge Wynn, Judge Diaz, Judge Floyd, Judge Thacker, Judge Harris, Judge Quattlebaum, Judge Richardson, and Judge Rushing voted to deny rehearing en banc. Judge Motz and Judge Keenan did not participate in the poll.

Entered at the direction of Judge Agee.

For the Court

/s/ Patricia S. Connor, Clerk

AGEE, Judge, concurring in the denial of rehearing en banc:

The Due Process Clause of the U.S. Constitution's Fourteenth Amendment prohibits States from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 195 (1989). A "narrow" exception to this general rule exists when a state actor "created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction of omission." *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015).

Viewing the facts developed during discovery in the light most favorable to the plaintiffs, the majority opinion explains at length that they failed to satisfy their burden at summary judgment to show the defendant Baltimore City Police Department officers created or increased the risk of harm that Veronica Williams' husband posed to her and her unborn child. As Judge Blake found in a thorough and meticulous review, there is simply no evidence in the summary judgment record to match the plaintiffs' allegations. There is no evidence the defendant officers diverted the arrest warrant. Nor is there any evidence that either officer assisted Williams with avoiding arrest, ordered that he not be arrested, or affirmatively prevented Williams from being arrested earlier. And there is no evidence that either officer had reason to believe Williams posed a specific or immediate danger to his wife apart from the mere existence of the misdemeanor warrant. Finally, Officer Lioi's texts to Mr. Williams, without contradiction, told him to avoid his wife. J.A. 559 ("I

4

wouldn't be alone with her. . . . Have a witness with you if you meet. . . . I would avoid her.").

In short, the record does not allow for the conclusion that the officers undertook affirmative acts that would allow for liability under the state-created danger doctrine. *Pinder v. Johnson*, 54 F.3d 1169, 1175, 1177 (4th Cir. 1995) (en banc) (stating that state actors do not "'commit[] an affirmative act' or 'create[] a danger' every time [they] do[] anything that makes injury at the hands of a third party more likely," and that instead, would-be plaintiffs must come forward with evidence of an act "more akin to a[] [state] actor [himself] directly causing harm to the injured party"). As Judge Blake's detailed opinion noted, the record is devoid of evidence of an act "akin to a[] [state] actor [himself] directly causing harm to the injured party." *Pinder*, 54 F.3d at 1177.

The panel majority faithfully applied the principles set out in *Deshaney*, *Doe*, and *Pinder* as well as *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748 (2005). The plaintiffs simply failed to meet their burden to survive summary judgement as properly determined on the record applying the high bar set by these cases. I therefore concur in the Court's decision to deny en banc rehearing.

GREGORY, Chief Judge, dissenting from the denial of rehearing en banc:

The state-created danger doctrine is narrow, but it isn't naught. It provides a cause of action where, as here, there is triable evidence of injury resulting from state officers' affirmative conduct that enhanced a dangerous situation, which a reasonable officer would have known to exist. *See Doe v. Rosa*, 795 F.3d 429, 437, 440 (4th Cir. 2015). The injury need not result from the hand nor intent of the officers to do harm. In this case, the enhanced danger resulted in the death of a mother and her unborn child.

An analysis of the doctrine is assisted by a methodical approach: (1) understanding the danger; (2) determining whether a reasonable officer would have understood the danger existed; (3) assessing whether the danger was enhanced by the officer's affirmative conduct; and (4) deciding whether the injury was within the scope of reasonable consequences that flow from the enhanced danger. With all due respect, this Circuit's new precedent is wanting in this regard. I write to note how important it is to analyze the state-created danger doctrine properly. The rigor and reason of the full Court would have been helpful.

Viewed through the proper framework, with all reasonable inferences drawn in favor of the non-movant as required on summary judgment, the facts in this case present a jury question on state-created danger. First, the evidence shows that Williams posed a threat to Mrs. Williams because she swore out a warrant for his arrest by reporting that he had restrained her and cut off her hair. J.A. 311. Second, a reasonable officer would have known that Mrs. Williams's swearing out a warrant for the assault posed a danger to her. Even without the specifics of her report, the domestic assault charge in the warrant would

6

have placed a reasonable officer on notice of the danger she faced as a victim of domestic violence.[*] J.A. 764.

Third, a jury could find that Major Russell and Deputy Lioi enhanced the danger to Mrs. Williams by deliberately acting to help Williams delay his arrest, even though they had no intent to harm her.  Our prior cases have established that the state-created danger doctrine does not apply to failures or omissions.  *See Doe*, 795 F.3d at 431, 439–41 (deciding that a college president did not affirmatively increase the risk of child abuse by failing to report it to law enforcement); *Pinder v. Johnson*, 54 F.3d 1169, 1172, 1175 (4th Cir. 1995) (holding that an officer's failure to charge the plaintiff's ex-boyfriend with a "serious offense" did not qualify as an affirmative act).  But the officers' conduct in this case goes beyond a mere failure to arrest.

For instance, there is evidence that the officer who picked up the arrest warrant for Williams did not take it to Central Records pursuant to protocol, and that he would only depart from protocol (1) if an officer already had the suspect in custody (which is not the case here), or (2) if a superior officer, like Deputy Lioi or Major Russell, gave an order to do so.  J.A. 575–78, 589.  Indeed, there is evidence that Major Russell said the warrant had been "pulled" from its normal processing route.  J.A. 268.  Both officers also made

---

[*] About half of all female homicides result from domestic violence. Emiko Petrosky, MD, et al., *Racial and Ethnic Differences in Homicides of Adult Women and the Role of Intimate Partner Violence – United States, 2003-2014*, Morbidity and Mortality Weekly Report (July 21, 2017), https://www.cdc.gov/mmwr/volumes/66/wr/mm6628a1.htm?s_cid=mm6628a1_w#T1_down. Critically, the same report found that one in ten victims of intimate partner homicide was reported to have experienced violence in the month preceding their death. *Id.*

7

arrangements with Williams to allow him to self-surrender on his terms. *See, e.g.*, J.A. 277.

Additionally, the record shows that Deputy Lioi advised Williams to stay away from his wife, so as to avoid forcing the officers' hands to serve the warrant. *See, e.g.*, J.A. 700–05. Deputy Lioi also took the liberty of providing Williams with two letters, including one that confirmed Williams had tried to turn himself in without any mention of the coordinated plan for Williams to self-surrender the following week. J.A. 631–32. Taken together, this evidence shows that the officers committed affirmative acts—not mere failures or omissions—to help Williams delay arrest on domestic assault charges. Accordingly, a jury could find that, by delaying Williams' arrest, the officers enhanced the danger Williams posed to his wife.

Fourth, the death of Mrs. Williams and her unborn child fell within the scope of reasonable consequences of the officers' conduct to assist her abusive husband in delaying arrest. In light of the clear danger that domestic violence victims face, especially after reporting their abusers to authorities, *see supra* n.*, the officers nevertheless worked with Williams to postpone his arrest until a time of his choosing. Thus, a jury could find that the officers' deliberate conduct to help Williams delay arrest enhanced the known danger that led to Mrs. Williams and her unborn child being stabbed to death. And it is simply error to say as a matter of law that a jury could not so find.

There are cases that instruct us as to when the state-created danger doctrine *does not* apply, but unless we analyze the law and facts through the appropriate framework, we may never find a case in which the doctrine *does* apply. Here, we had a chance to say what the

8

doctrine is and how it should be applied, and we failed to do so.  Because this leaves our jurisprudence wanting, I dissent from the decision to deny rehearing en banc.